Good morning, Chief Judge McGeough, Judge Bennett, Judge Fletcher. My name is David Snyder. I'm here on behalf of the plaintiff appellant, James Herndon. May it please the court. Hit him in the hard area surface, and if you break bones, you break bones. This stunning admission captures the essence of the instant 42 U.S. Code Section 1983 matter. This was Defendant Appellee Sergeant Gillis' admitted philosophy regarding the appropriate use of force. This was Sergeant Gillis' admitted philosophy regarding the training of Defendant City of Henderson's officers on the appropriate use of force. In erroneously granting summary judgment to Sergeant Gillis in the city, the district court misapplied Fourth Amendment case law, misapplied the summary judgment standard, and concluded that no seizure occurred, notwithstanding the fact that Sergeant Gillis struck James Herndon in the back of the head with an assault rifle butt and subsequently tased him. Having found that no seizure occurred, the district courts additionally rejected Herndon's Monell claim and summarily dismissed his evidentiary concerns as moot. Now, the central question, I believe, before this court this morning is whether Sergeant Gillis' rifle butt strike to Herndon's head and subsequent tasing constituted a seizure under the Fourth Amendment. We submit that the weight of authority is a resounding yes. Before you go further, I just want to confirm, as the defense pointed out and seems like by your opening statement here today, that you are only appealing the grant of summary judgment in favor of Sergeant Gillis and you're not appealing the order regarding Officers Good, Newborn, Vega, and Nelson and Russo? That's correct, Chief Judge McGee. We are not. We also are not challenging the district court's grant of summary judgment regarding the Fourteenth Amendment claims. We are here today challenging the Fourth Amendment claim, the Monell claim, and various evidentiary decisions. And because of the sequencing of the various decisions that were before the This is probably pedophilic, but in saying that you're waiving or not pursuing Fourteenth Amendment claims, the Fourth Amendment claim is incorporated via the Fourteenth Amendment. So in that sense, I don't think you're waiving or dropping your Fourth Amendment claim. Is that correct? Yes, and I don't believe that I said that, Your Honor. And if you misheard, I do apologize. We are very much advocating on behalf of our clients Fourth Amendment claim against Sergeant Gillis, which is incorporated as against the state's locality through the Fourteenth Amendment. Correct. I understand. Yes. And I guess what I meant to say was the standalone Fourteenth Amendment claim. Thank you very much, Chief Judge McGee. That was perhaps nitpicking, but I wanted to make sure we had this straight. Okay. Thank you, Judge Fletcher. Now, first, I want to briefly address a waiver conclusion that the district court mentioned in its order and that opposing counsel is raising here today. They claim that in the opposition to the motion for summary judgment against the officers, that we didn't provide any argument that Sergeant Gillis seized James Herndon. And I would note, and the court will find this in Volume 11 of the excerpt of record on pages 2,523 to 2,7, we raised the Graham versus O'Connor factors and qualified immunity in our opposition to summary judgment. We provided 11 cases that all expressly deal with whether an officer's use of force constitutes a seizure. So I think that their reliance on Padgett versus Wright, Wild West Institute versus Bull, and Smith versus Marsh is inopposite. In those cases, it was clear the parties didn't make any argument below or in their briefs. Here, we have those arguments in our opposition to summary judgment. Now, having addressed the waiver issue, I want to now turn to what I think is central here, is whether or not a seizure occurred in this instance. The district court seemed to rely on United States versus Al Nasser 2009 case from this court to conclude that no seizure happened in that case. Now, as this court is aware, in Al Nasser, the facts are inopposite to what happened here. There, I believe it was a tribal officer and border patrol agents trying to flashlight into a vehicle as it passed by, and the driver of the vehicle, after the flashlight flashed in, pulled over and stopped. And this court concluded that was not a seizure because, one, the officers did not intend for that car to pull over. They just wanted the car to go about its business and be along the way. But that the driver nonetheless stopped, so it turned into something consensual rather than an actual seizure. That is not what happened here, clearly. As the United States Supreme Court has repeatedly held, a laying of hands or an application of physical force to restrain movement is a quintessential seizure. And there's a line of cases going back in Tennessee versus Garner, right? An officer fatally shot a fling suspect, and when the bullet struck the fling suspect, that person was seized. It didn't matter that the officers didn't actually restrain them. In Broward versus County of Inyo, the police used a roadblock to intentionally stop a fling suspect, and that roadblock stopped the suspect. So when the vehicle struck the roadblock through means intentionally applied by the government, that person was then seized. It didn't matter that the police didn't actually restrain the person at that moment. Now, here, Sergeant Gillis admitted in his deposition testimony that he used force to incapacitate Herndon. The court will find this in Volume 9 of the Exempter Records on page 1,999, and I quote, I was hoping to temporarily incapacitate the male long enough for the officers to be able to get a hold of the male's arms and place him into restraints. Sergeant Gillis intended to restrain Herndon, and after he struck him with an assault rifle butt and tased him, Herndon stopped, and they had to pull him off, and he lay on the floor for a while afterward as he recuperated. Now, let me just ask you, yes, Your Honor. Let's say we agree with you that the district court may have erred here on the seizure question. The question I wanted to ask you is whether it's appropriate for us to resolve the reasonableness question or whether we should remand it back to the district court. This court would necessarily have to remand, and as it stated in Hayes v. County of San Diego in 2013, collecting multiple cases to this effect, that the analysis of whether Sergeant Gillis' seizure is unreasonable under the circumstances is a question for a jury. And again, here, this is on a motion for summary judgment, and this court must view all the facts and draw all reasonable instances therefrom in the favor of James Herndon, not the city. Let me ask a follow-up to the Chief Judge's question. Are you suggesting that we should make that determination as a matter of law that it goes to the jury, or if we were to agree with you that there was a seizure here, that we should remand to the district court to make that determination of whether it can be determined as a matter of law or should go to the trier of fact in the first instance? I don't see that we should make that decision given if we choose to reverse the district court on the seizure issue. Well, I think that we have a record before us that has sufficient facts to show in the context of a summary judgment motion that a seizure occurred here. Can you point out where the district court found facts sufficient for this panel to make a reasonable determination? Because I tried to look at this in advance, and from what I can tell, it doesn't seem like we have those sufficient facts. Thank you for the question, Chief Judge McGeough. What I would say is that the district court here found in its order that, based on a declaration that Sergeant Gillis supplied, that he did not intend to stop Herndon. And based on that piece of evidence before it, it assumed because there was no intent and there couldn't have been a seizure. The district court also alluded to mistaken identity as a reason why that there couldn't be a seizure in this instance. And I think that in relying upon those facts, the district court committed an error. I think facts here plainly show, based on Sergeant Gillis' deposition testimony, he says, I meant to stop him. No, no, no. Maybe I asked a bad question. I was not asking whether we should, whether we can decide or not that there was a seizure, but I took the Chief's question as reasonableness. And should we send that to the jury or should we send that back to the district court if we agree with you on seizure and tell the district court there was a seizure here, the rest of the issues are now back for you? Yes. So I think here that in reviewing this motion for summary judgment, it's clear that we've proffered sufficient evidence to show that tribal issues of fact remain as to whether or not the seizure under these instances was reasonable. And if I may, I can go through some of those factors as we presented in our briefing. I think ultimately this is a question for a jury to determine. I think we, I think, it may or may not be ultimately a question for the jury whether it was reasonable. You may end up winning a summary judgment as to whether it was reasonable. But one way or the other, it's not in front of us now. That's a question for the district judge to decide whether or not there's summary judgment, whether it goes to the jury as to the reasonableness. That's just not here. I understand, Your Honor. Thank you. So let me just ask you, if we're all in agreement, if we are all in agreement with Judge Fletcher here, I'm trying to figure out what other of the issues would go back to the district court as well in light of what you raised. Would all of the remaining issues then go back? Thank you. And so what I will do first then, I suppose, is I would start with, as the district court noted in its first footnote in its order, because it found that no seizure occurred, that basically terminated everything else in the district court's mind. Without a seizure, there could not be a Monell claim. Without a seizure, the district court summarily dismissed the evidentiary rulings as moot. What we would note is that regarding our objection to the motion to compel, the district court had to, under Federal Rule of Civil Procedure 72A, at least consider the objection to the magistrate judge's order, and it did not. And, you know, the district court, because there's no actual conclusion that the court made regarding... Well, can't we look at that, DeNovo, because it seems like we have case law that says when the district court denies a motion to compel, additional discovery as moot, without considering its merits, our court can review the denial of discovery, DeNovo. So couldn't we go ahead and review the magistrate judge's order to see if it was clearly erroneous or contrary to law? This court can certainly do that. I mean, that is the law in this circuit. And so then, if we can, if you wouldn't mind telling me how or why you think that magistrate's order was clearly erroneous and contrary to law. Well, I mean, the rules of professional conduct compel me to say that this order, this motion to compel was untimely. And that obviously gives the magistrate a ground to deny, which means that that type of decision can be affirmed by this court. The reason that we asked for this to go back down to the district court is the district court's more aware of the context in which this discovery dispute occurred and the effect that the COVID pandemic was having on the city attorney's office and on trial counsel's office in the context of this request for the additional discovery. So let's move on to the motion to supplement the record, I believe. I'm trying to figure out what the status of that is in light of what it seems that you have received a lot of what you were asking for at the time. And so can you kind of update the court on that? Yeah, but the problem here is that the Las Vegas Review-Journal got a lot of the evidence that we requested in our various requests for production and interrogatories. However, the district court obviously denied the motion to compel, and it doesn't seem that the district court is going to allow this evidence into trial because, or excuse me, for that reason. So our problem here is, is that not giving, not allowing James Herndon to use this evidence is incredibly prejudicial. The city had this evidence. They freely turned it over to the Las Vegas Review-Journal. They wouldn't disclose it despite asking for it in requests for productions 20, 22, 23, 24, 30, and interrogatories 10 and 11. It speaks to its impeachment evidence for Sergeant Gillis. I mean, the record before this court demonstrates that he repeatedly lied during his deposition testimony. Its impeachment evidence against the city's Federal Rule of Civil Procedure 30b-6 witnesses who came unprepared and made misrepresentations about the city of Henderson's history with the use of force. And it certainly provides all of the evidence that was necessary to convince the city. So, again, let me just say, ask you a question, see if you can respond to it. Have you received or obtained all the responsive, I guess, documents that you wanted, that you requested? The city objected on May 7, 2020, to the request for production and the interrogatories. No, I understand. Have you received those documents? The plaintiffs, the council has those and is using them in the state court claim that go on. When you say council? The trial council, Herndon's trial council. So, you have them? For the state court claims, yes, they have them. Okay. Let me ask you a question about that. So, the district court dismissed the whole case, which included the supplemental claims, supplemental jurisdiction claims, the state court claims? No, the court dismissed those and they went down to state court. And those are actively ongoing. So, you're not asking us to reverse the district court's decision not to take up the supplemental jurisdiction claims? No, Your Honor. So, there's going to, in your view, there's going to be a state court trial on the state court claims, on the state law claims, and there's going to be, if we agree with you as to seizure and ultimately there's a trial on the federal claims? Yes, Your Honor. So, there are going to be two trials, theoretically, arising out of the exact same set of facts? They're separate claims. One is the excess of the Monell claim against the city, which we can't bring in state court, and then the excessive use of force claim under the Fourth Amendment against Sergeant Gillis. The other claims in state court are different and distinct from those, Your Honor. Well, I mean, you could bring the 1983 claims in state court. You're right about that, yes. And I see that my time is running short, so if I may. You want to reserve the time? Yes, what little time I have left, if any, or am I over? Thank you. Good morning. May it please the Court, Nancy Savage for the City of Henderson and Sergeant Gillis, since the other officers are now out of the case. In this case, let's just jump in to what you've been talking about. At the lower court, in the opposition, the plaintiff did not address the seizure issue. We raised the seizure issue. He did not address those cases in the lower court. They pointed to where they cited 11 Fourth Amendment cases. They cited that with respect to— —the plaintiff in the district court. There's no question the district court reached the seizure issue, right? The district court did, based upon what was in front of the district court. But the district court decided the seizure issue. So even if we were to believe that it wasn't raised in the best way in the district court, we have the discretion to going to reach it, as opposed to saying plaintiff waived it. You have that discretion. That's correct. And therefore, would you address the seizure issue on the merits? Excuse me? And therefore, would you address the seizure issue on the merits? I'm sorry, I wasn't closing off the microphone. I will, I will, Your Honor. I was kind of headed that direction. Okay. Basically, what we have here is plaintiff has raised some cases and addressed some of the cases that we raised. As we briefed in the lower court and in here, in this court, where you have a consensual contact, where you have an accidental contact, where you have an incidental contact, that is not a Fourth Amendment seizure. So counsel, I'm going to read you two sentences from Brower v. County of Inyo, Justice Scalia's opinion. Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking. I mean, I'm not even going to go to California v. Hidari D. and other cases, but based on a seizure occurs even when an unintended person or thing is the object of the detention or taking, citing Hill v. California. How is that not what happened here? Even if Officer Gillis didn't think he was grabbing the plaintiff, why does that matter for Fourth Amendment purposes? He clearly thought he was grabbing somebody. But Brower went on to state that the detention has to be willful, meaning it has to be intended to be detaining that individual. Where does it say that? I don't see that in Brower. I don't see it saying that if you believe you're detaining Sally, but you detain Sue, you haven't seized Sue. Excuse me, I'm sorry. I'm sorry. If you think you're grabbing Sally, but you're actually grabbing Sue, I don't understand how you haven't seized Sue. Well, and in this instance, I did see that in Brower. I don't have the site in front of me, and I apologize. In this instance, I mean, it's our position that it was either incidental or that Mr. Herndon consented, because Mr. Herndon jumped into the situation. Mr. Herndon consented to being hit in the head with the butt of a rifle? I don't get that part. Well, he consented to the scuffle that was going on.  As far as being struck by the rifle, that was part of the overall 30-second contact that went on, and it wasn't even an intentional head strike. Ms. Savage, I'm having difficulty with your argument here, because not just a Brower, but our own case law, I think it was in Villanueva versus California, pretty much says the mistake of identity does not matter when there was intent. In this case, Sergeant Gillis's mistake of identity really didn't matter when he intentionally hit Mr. Herndon to incapacitate him, because from the Villanueva case, the test for what constitutes a seizure is an objective one that counts the intent conveyed, not the officer's subjective intent. So with that in mind, I'm not quite sure how you can reconcile your position. I understand what you're saying, Your Honor. This certainly wasn't anything that was raised by the plaintiff, and again, I understand that. So you're reviewing this de novo, and our response has been to what the plaintiff has told us in this, and what they have argued. They didn't argue anything about the seizure below. And I understand, again, that you can review it de novo, but they basically conceded that there had been a seizure in the lower court. And when we come up on appeal, this court should be reviewing what the lower court had in front of it. And I understand . . . You're asking me . . . With the plaintiff, even though that was an unintended or accidental strike, not of . . . But it wasn't accidental, is the problem. And I guess, I'm just not sure . . . I appreciate your arguments here, but let's just assume that there was a seizure, okay? Let's go forward from that point. If there's a seizure, trying to figure out what do we do next? Do we send it back to the district court? I'm going to ask you the same question I ask your opposing counsel here. Do we send it back to the district court for a reasonableness determination? I believe you do. Okay. And then the other motions, the motion to compel, the motion to supplement, or . . . I guess the other claims, the Monell claims and related claims, those go back as well? They would. And you're . . . I take it you agree with plaintiff's counsel that even if we reverse the Fourth Amendment 1983 claim, that we should leave alone the district court's decision to not take up the supplemental jurisdiction state law claims and leave that to state court? I don't. Okay, why don't you tell me about that? I don't think that the two should be decided or tried separately, however it comes out, when we get back down to, if it goes back down, because you're going to get two different conflicting findings on basically the same set of facts. They should be heard together and basically supplemental jurisdiction was denied when summary judgment was granted, getting rid of all the federal claims, if in the event it goes back to the district court, the district court should accept jurisdiction of those supplemental claims as well so that there's a consistent view of the facts. So you think at least if we have the power to do that, we should at least let the district court look at it and then plaintiff can decide if plaintiff wants to voluntarily dismiss the state law claims and take whatever kind of claim or issue preclusion consequences that might flow from that, but your view is we should leave that to the district court, but at least give the district court the opportunity to exercise its discretion? That's my view. And help me understand how that would work. What would the district court then do? Does the district court say, sorry, I didn't mean it. I want those cases, I want the state claims back. I've never seen that happen. How's this going to work? That's a good question. I mean, I think they could agree, since they were in this case to begin with, they could agree to exercise supplemental jurisdiction over that. Do you know what state is of the state claims? Yes, it's, it's been filed in state court. Recently, the judge that was assigned to that case was disqualified and it's just been transferred to a new judge. So there's been nothing other than basically having it go over to state court. Because in, I mean, following up on what Judge Fletcher said, in the normal case, it's plaintiff who's asking that the dismissals be reversed. Correct. Correct. You know, it seems to me if the plaintiff is now in state court, having been sent there by the district court, that the plaintiff probably has the right to say, well, I'd prefer to stay here now. I didn't seek it in the original. I mean, I didn't do claim splitting, but the district judge split them for me. And now that I'm split, I know where I am and I'm going to make the best of it. I don't see why the plaintiff can be, how the plaintiff can be compelled to come back to federal court now that the federal court said, you're out of here. And just to make clear, I don't think that they can be compelled. I think that, that probably there'd be a motion before either or both of the I'm trying to think how we would do that. That I hadn't thought that through, but I think the federal court would have that option to accept supplemental jurisdiction if we were in a position where that were an option for it. I guess you're right. You can't direct them that it has to come back from state court. Yeah. And I don't think you can make a removal motion in the state court proceeding because there's now no federal claim. And apparently there's no diversity of citizenship. There's no independent basis for federal question jurisdiction, for federal court jurisdiction. So a removal motion by you in the state court is a loser. Correct. Yeah. Well, it's an interesting question, but I've never seen it. Yeah. There are several things in this that we haven't seen before. I will stay with respect to going back to what the court ruled in this manner, that it was appropriate under the circumstances for the court to deny, just basically saying that they'd made the decision of the seizure and under that, that understanding that there was nothing in the proposed supplements that would go to their decision in the motion for summary judgment. That was the basis. And it was stated in the order with respect to the motion to compel, I would think that would go back to the state court because it was timeliness that the motion was based upon. And I think that council already said that they believed as well because the district court has more knowledge concerning at least the allegations being made by the plaintiff as to the effect of COVID on discovery in this matter would be more familiar to the district court judge. We think that the magistrate was correct, that the motion was untimely and that that should be sustained. With respect to whether that should have been something that was included in the order, we have cited cases, including the mini case in our briefing that indicates that where it becomes moot, there doesn't need to be a specific order on why. Now is the untimeliness of the motion, is that a jurisdictional untimeliness so it can't be overcome? Or is it within the discretion of the magistrate judge or the district court to forgive the untimeliness? It's within discretion of the court, Your Honor. Would it be remiss for us if we were to remand holding that, in fact, this was a seizure to indicate to the district judge that it may be appropriate to look again that the determination is timeless now that we know that the case is going to go forward with respect to reasonableness? You certainly have that authority. Okay. Do you have anything else? I don't. Okay. Thank you. I think you've been dealt a very difficult hand here, but I appreciate your arguments. Thank you. You have a few seconds left here. Thank you, Chief Judge McGeehan. If I may just close briefly. The city of Henderson is the second largest city in Nevada. Citizens deserve a professional police department and accountability invariably assists in such pursuit. Given the district court's erroneous grant of summary judgment, it now falls upon this court to give James Herndon his day in court and to promote accountability of police departments. Sergeant Gillis seized Herndon. Sergeant Gillis, as a training officer, used his philosophy and unbearably taught other officers improperly on the appropriate use of force. And Herndon therefore urges this court to reverse the district court's grant of summary judgment and remand for further proceedings. Thank you. Thank you, Mr. Schneider. Thank you for your oral argument presentation here today. The case of James M. Herndon v. M. Gillis is submitted.
judges: MURGUIA, FLETCHER, BENNETT